Melvin H. Osterman, J.
This is a claim against the State of New York for damages sustained by the claimants as a result of the alleged creation of a nuisance and negligence of the defendant.
In 1953, the State reconstructed a portion of State Highway No. 5499 which is located in the Town of Bethlehem, Albany County. As a result of this reconstruction, a section of the old *829 road, 16 feet wide, was joined with a new paved road, 22 feet wide, at a point approximately 30 feet distant from the southwest corner of claimants’ property. At the juncture, the new road is approximately an inch to an inch and one-half above the face of the older road thereby creating an uneven road joint. The claimants contend that when heavy trucks or fast-moving cars pass over the joint vibrations are transmitted which have caused serious damage to their house. The claimant Burdette R. Tompkins testified that he actually saw the pavement bounce up and down and move when vehicular traffic passed over the joint.
The record discloses that the claimants moved into their house in 1947; that there were no vibrations felt from 1947 to 1953; that when the highway was graded in 1953 with the joint in place as described above, the vibrations commenced; that almost immediately thereafter the claimants complained to the resident engineer of the defendant; that in the Spring of 1954, an amiesite blacktop patch was placed over the joint by the State and that the vibrations ceased during the time that this patch remained together; that the patch wore out in the latter part of 1954 and the vibrations started again; that the claimants thereupon complained again to the State’s resident engineer, who advised claimant to speak to the district office of the Department of Public Works; that the claimant did complain to the district office but that nothing further was done to alleviate the condition. The claimants also testified that the vibrations were felt mainly during the Spring after the ground frost had thawed and that this condition has continued since the last blacktop patch disintegrated.
The State’s resident engineer, now retired, called as a witness on claimants’ behalf, not only corroborated the claimants’ testimony, but also indicated the various methods by which the defendant could have possibly corrected the situation or at least have ascertained its cause, but which the defendant failed or neglected to do.
On the basis of the testimony adduced, we feel that the claimants have proved their cause of action against the State. While expert engineering testimony Avith respect to the exact causation of these vibrations in geological terms is absent from the record, the court finds as a fact that the vibrations had their impetus in trailer trucks passing over the uneven joint and that the defendant is liable for the resultant injuries. (Dixon v. New York Trap Rock Corp., 293 N. Y. 509; Evans v. Keystone Gas Co., 148 N. Y. 112.)
With respect to the damages to be awarded, the court is guided by well-settled rules regarding the measure of damages in cases *830 of continuing tort. In those cases involving suits against governmental bodies where Statutes of Limitation and prior notice govern the plaintiff’s right to sue, the rule was applied and discussed by Cabdozo, Ch. J. in Thomann v. City of Rochester (256 N. Y. 165,170,171): “ What he [the plaintiff] lost was the right to include in the relief an award of damages antedating by more than thirty days the presentation of the notice in statutory form (Meruk v. City of New York [223 N. Y. 271]). * # * If the remedy is at law, the plaintiff may recover the damages sustained up to the commencement of the action, and this is the limit of the recovery ’ ’.
The language in the Thomann case would seem to indicate that claimants’ damages are limited to 90 days prior to the filing of their notice of intention, to wit, July 23,1954, up to the time of the commencement of their action (the filing of their claim), to wit, October 22, 1956.
However, we feel that the Thomann and Meruk cases do not intend to afford a claimant a greater damage period than that which is limited by the applicable Statute of Limitations, but merely define the extent of the damage period as antedating the filing of a notice of intention or notice of claim by the requisite number of days, but still ultimately measured by the statutory period.
The chronology of filing in the instant claim distinguishes it factually and not legally from the Thomann and Meruk decisions. Chief Judge Cabdozo, in the Thomann case indicates that claimant’s damages can be proven from 30 days prior to his notice up to the commencement of litigation even though the Rochester City Charter provided that the litigation must commence within one year from the accrual of the claim. The language of this decision would be applicable in those cases where the litigation is commenced subsequent to filing the statutory notice, but still ivithin one year from the accrual of the claim. In such event, as indicated in the Thomann opinion, the damage period would have included the 30 days prior to the filing of the notice. However, this should not be construed to mean that the Statute of Limitations is extended by such period. In the case at bar, had the claim boon filed not later than one year and nine months subsequent to the filing of the notice of intention, the damage period would have commenced 90 days prior to such notice of intention. By so doing the damage period would still be within two years from the filing of the claim.
However, this claim was filed two years subsequent to the filing of the notice of intention. If we extend the damage period to antedate the notice of intention by 90 days, the claimants will *831 have been able to prove damages for a period of 2 years and 90 days prior to the filing of the claim, in clear contravention of subdivision 3 of section 10 of the Court of Claims Act. It would therefore seem that the excellent legal reasoning and soundness of the Thomann and Meruk decisions do not apply to a claim whose chronology of filing is similar to the one at bar. Dicta in the Thomann case (256 N. Y. 165, 175, supra) would seem in accord: The objection would still remain as to the bulk of the demand that the plaintiff did not bring his suit within a year after the time when the damages were suffered (Rochester City Charter, § 632).”
In the court’s opinion, therefore, the damages are limited to those occurring during the two years prior to the filing of the claim, to wit, October 23, 1954 to October 22, 1956. (West v. State of New York, 205 Misc. 492; La Bose v. State of New York, 199 Misc. 317; cf. Simpson v. State of New York, 130 N. Y. S. 2d 804.)
The exception to this rule would arise if claimants’ damages were permanent. The word ‘ ‘ permanent ” is to be construed as permanent by definition of the act itself, that is, that the act itself is incapable of correction or repair. By “ permanent ” the courts have meant such trespasses and nuisances as the killing of trees by escaping gases (Evans v. Keystone Gas Co., 148 N. Y. 112, supra); the cutting and removing of timber (Argotsinger v. Vines, 82 N. Y. 308); or the removal of foliage (Hartshorn v. Chaddock, 135 N. Y. 116). In the case at bar there is no testimony to indicate that the condition complained of is not susceptible of correction. Indeed, one of the claimants’ witnesses indicated the various steps that the State could take to ascertain and possibly correct the condition. The court finds therefore that this wrong is not of a “ permanent ” nature.
The court will also strike out and not consider in awarding damages herein, the testimony of claimants’ real estate expert with respect to the diminution of the fee value of the premises. Damages awarded for diminution of fee value can only be based on an assumption of permanence, an assumption clearly improper in this case.
In reversing a judgment which considered such diminution value in cases of continuing tort, the Court of Appeals said: 1 ‘ A recovery on the basis of permanent damage is not permissible in a common-law action for a trespass upon land unless the injury is incapable of actual, physical repair and, therefore, in its nature and of necessity permanent.” (Dietzel v. City of New York, 218 N. Y. 270, 272.)
*832 The claimants also ask this court to issue a permanent injunction against the defendant to either fix the road properly or in the alternative to close the road to traffic in order to prevent the recurrence of this injury. The claimants assert that this court possesses such equitable jurisdiction citing Psaty v. Buryea (306 N. Y. 413). The court does not agree with claimants’ contention that it possesses such broad equitable jurisdiction.
This court, although constitutionally created, does not possess complete equity jurisdiction as does the Supreme Court. "What it has may be the power to grant equitable relief when coupled with and part of a judgment for money damages (Psaty v. Duryea, supra). Here, however,- the claimants seek independently of their legal damages broad injunctive relief against the sovereign. The request for equitable relief is neither dependent upon nor incidental to the enforcement of the judgment for money damages. Under such circumstances, the court does not have the power to invoke the kind of equitable jurisdiction sought.
The claimants, however, are entitled to damages for the cost of repairing and restoring their property during the period October 23, 1954, to October 22, 1956. The testimony indicates that the cost of repair during the damage period of 1954 was $300, during the year 1955, it was $1,600, and during the Spring of 1956, it was $700, making a total of $2,600 and the claimants shall have judgment against the State of New York for that amount.