267 F.Supp.2d 288 (2003)
COUNTY OF SUFFOLK, New York, Plaintiff,
v.
TRAVELERS INSURANCE COMPNY, the Fidelity and Casualty Company of New York, Royal Insurance Company, Defendants.
No. CIV.00-5406 DRH MLO.
United States District Court, E.D. New York.
January 29, 2003.
*290 Tinari, Paar, O'Connell & Osborn, LLP, Commack, NY by Frank A. Tinari, for Plaintiff.
Morrison & Foerster LLP, New York City by Charles L. Kerr, for Defendant Travelers Insurance Company.
Hammill, O'Brien, Croutier & Dempsey, P.C., Mineola, NY by Richard M. Wolff, for Defendant Fidelity and Casualty Company of New York.
McElroy, Deutsch & Mulvaney, New York City by Kevin E. Wolff, Justin N. Kinney, Kenneth H. Parks, for Defendant Royal Insurance Company.

MEMORANDUM & ORDER
HURLEY, District Judge.
Suffolk County initiated this action for declaratory judgment regarding Defendants' duty to indemnify and defend in a separate action in which Suffolk County is the defendant. The Defendants in the instant action filed a motion for summary judgment, arguing that the underlying action does not implicate the relevant policy periods. As such, Defendants argue that they have no duty to either indemnify or defend Suffolk County. For the reasons discussed infra, this motion is granted in part and denied in part.

I. BACKGROUND.
A. Facts Common to All Defendants.
In 1965, two stone groins were constructed near Georgica Pond in Easthampton, New York ("Georgica groins"). Groins are "strong, low sea walls built at a right angle to the coast[line]." Construction of the Georgica groins began in February 1965 and was completed in September 1965. In Ireland v. Suffolk County, 00-CV-2412 (E.D.N.Y.), an individual that owned a beachfront home near the Georgica groins initiated an action for the alleged erosion of her property by the Georgica groins ("Ireland Complaint"). In that related action, Plaintiff Cynthia Hamlin Ireland ("Ireland") alleged that the County's negligence in the "design, construction and maintenance" of the Georgica groins resulted in violations of the Fifth and Fourteenth Amendments of the United States Constitution, Article 1 of the New York State Constitution and of the Suffolk County Charter. The: Ireland Complaint was filed on April 27, 2000, and is currently assigned to me.
*291 In the instant action, the County filed a complaint on September 8, 2000, for declaratory relief. The complaint alleges that Travelers Insurance Company ("Travelers"), The Fidelity and Casualty Company of New York ("Fidelity"), and Royal Insurance Company ("Royal") (collectively referred to as "Carriers") breached their respective insurance policy contracts by refusing to indemnify and defend the County for the acts alleged in the Ireland Complaint. These contracts covered various discrete time periods, which are discussed infra.
On January 30, 2002, this Court received Rule 56 motions for summary judgment from Fidelity, Travelers and Royal. The Notice of Motion stated that the purpose of this motion was to dismiss the claims against the Defendants because the relevant time periods from the Ireland Complaint were not covered by the policies issued by Defendants.

B. The Fidelity Policy.
Fidelity issued an insurance policy, under Policy Number XP266799, for the period of April 1, 1959, until April 1, 1960 ("Fidelity Policy 1959-1960"). Fidelity Policy 1959-1960 obligated Fidelity to pay on behalf of the County all sums that the County is legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident. Fidelity Policy 1959-1960 also provides that Fidelity is obligated to defend against any suit brought against the County for accidents that occur within the policy period; i.e., April 1, 1959, until April 1,1960.

C. The Travelers Policies.
The following policies were issued by Travelers to the County:
1. Policy Number RSL 9040370, with a policy period from June 1, 1960, until June 1, 1961 ("Travelers Policy 1960-1961");
2. Policy Number RSL 9605266, with a policy period from June 1, 1961, until June 1, 1962 ("Travelers Policy 1961-1962"); and
3. Policy Number RSL 1752640, with a policy period from June 1, 1964, until June 1, 1965 ("Travelers Policy 1964-1965").
In Section I of the Travelers Policy 1964-1965, Travelers agreed "[t]o pay on behalf of the [County] all sums which the [County] shall be come legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident." Section IV of Travelers Policy 1964-1965 further provides that "[t]his policy applies only to accidents which occur during the policy period within the United States of America, its territories or possessions, or Canada."

D. The Royal Policies.
The County purchased liability insurance from Royal under a series of policies that cover the period between June 1, 1966, until January 15, 1976 ("Royal Policies 1966-1976"). The Royal Policies 1966-1976 obligated Royal to:
[p]ay on behalf of the [County] all sums which the [County] shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance [policy] applies, caused by an occurrence, and [Royal] shall have the right and duty to defend any suit against the [County] seeking damages on account of such bodily injury or property damage, even if the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but [Royal] shall not be obligated to pay any claim *292 or judgment or to defend any suit after the applicable limit of [Royal]'s liability has been exhausted by payment of judgments or settlements.
The Royal Policies 1966-1976 define "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the [County]." Likewise, Royal Policies 1966-1976 define "property damage" as "physical injury to or destruction of tangible property which occurs during the policy period ... or ... loss of use of tangible property ...."
From 1976 until the present the County has been self-insured.

II. DISCUSSION.

A. The Summary Judgment Motions.
The legal principles employed by the Court when ruling upon a motion for summary judgment are well-established. Summary judgment may be granted only when it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 57 (2d Cir.1987). The moving party bears the initial burden "of showing the absence of a genuine issue as to any material fact." Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).
Once the moving party has come forward with support demonstrating that no genuine issue of material fact remains to be tried, the non-moving party "must come forward with affidavits, depositions, or other sworn evidence as permitted by Fed. R.Civ.P. 56, setting forth specific facts showing that there exists a genuine issue of material fact." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir.1996). In reviewing these materials, the Court "is required to draw all factual inferences in favor of, and take all factual assertions in the light most favorable to, the party opposing summary judgment." Id
The Carriers have provided affidavits and exhibits that indicate that there may be no issue of material fact as to certain individual policies. The County, the nonmovant, asserts only four factual disputes. These factual disputes are alleged to be: (1) whether Ireland, the plaintiff in the related pending action, Ireland v. Suffolk County, 00-CV-2412, sustained damage from the period of 1964 until the present; (2) whether Ireland possesses a legally cognizable interest in the property from 1994 to the present; (3) the dates on which damage was inflicted upon Ireland's property and (4) whether Ireland is limited to damages from July 3, 1999, until the present. The substantive law governing the case determines those disputed facts that are actually material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude; the entry of summary judgment." Id. Therefore, to evaluate the materiality of the disputes, the Court now turns to the merits of the claims.

B. Obligation of Insurer to Indemnify and Defend.
Under New York law, an insurer has no duty to indemnify or defend if the insurer can demonstrate "as a matter of law that there is no possible factual or legal basis on which it might be obligated to indemnify its insured under any policy provision." Allstate Insurance Co. v. Zuk, 78 N.Y.2d 41, 45, 571 N.Y.S.2d 429, 574 *293 N.E.2d 1035 (1991). "The duty to defend insureds ... is derived from the allegations of the complaint and the terms of the policy" and rests on any allegations that arguably or potentially bring the actions within the protection purchased. U.S. Fidelity & Guar. Co. v. Executive Ins. Co., 893 F.2d 517, 519 (2d Cir. 1990) (quoting Technicon Elecs. Corp. v. American Home Assurance Co., 74 N.Y.2d 66, 73, 544 N.Y.S.2d 531, 542 N.E.2d 1048 (1989)). "Further, [the] policy protects against poorly or incompletely pleaded cases as well as those artfully drafted." Ruder & Finn Inc. v. Seaboard Sur. Co., 52 N.Y.2d 663, 670, 439 N.Y.S.2d 858, 422 N.E.2d 518 (1981). "If the allegations of the complaint are ambiguous or incomplete, the insurer is nevertheless obligated to defend if the case is potentially within the coverage of the policy." Ogden Corp. v. Travelers Indent. Co., 681 F.Supp. 169, 172-173 (S.D.N.Y.1988) ("The language of the complaint need not state all the facts requisite to establish insurance coverage."). Any doubt as to whether the allegations of the complaint state a claim that falls within the policy must be resolved in favor of the insured and against the insurer. U.S. Fidelity, 893 F.2d at 519 (citing American Home Assurance Co. v. Port Authority of New York & New Jersey, 66 A.D.2d 269, 412 N.Y.S.2d 605, 609 (1st Dep't 1979)).
Travelers concedes that the duty to indemnify and defend is contingent on either the occurrence of an accident or experiencing damage within the policy period. Royal contends that its duty to indemnify and defend is only triggered by the occurrence of an accident within its policy period. At present, Ireland v. Suffolk County, 00-CV-2412, has not been litigated to either a judgment or settlement. Therefore, by admission of all the parties to the instant action, the Court must determine whether the claims alleged within the Ireland Complaint occur within any of the relevant policy periods.
Fidelity Policy 1959-1960, Travelers Policy 1960-1961 and Travelers Policy 1961-1962 all cover time periods prior to the design and construction of the Georgica groins. Since all of Ireland's claims spring from the "design, maintenance and construction" of those groins, Defendants cannot, under any version of the facts alleged in the Ireland Complaint, be obligated to indemnify the County based upon those policies. The County maintains that Ireland "may allege" facts at some later date that would include the period prior to the 1965 construction of the Georgica groins. The County provides no authority for the proposition that an action can be maintained on the possibility that the complaint may be amended at some later date. As such, the County's argument does not persuade the Court. The remaining policies, the Travelers Policy 1964-1965 and the Royal Policies 1966-1976, require further discussion.
As discussed supra, the Georgica groins were constructed between February 1965 and September 1965. Travelers Policy 1964-1965 covered the period between June 1, 1964 and June 1, 1965. Contrary to the characterizations of Travelers and Royal, the Ireland Complaint is not solely for the failure to maintain the Georgica groins. Rather, the Ireland Complaint challenges "the improper design[1], construction and maintenance of the Georgica Pond Groins." Ireland Complaint at ¶ 32 (emphasis added). It is undisputed that Travelers Policy 1964-1965 covers the period during the construction of the Georgica groins and prior to their completion. Given the language employed in the Ireland Complaint, the Court cannot conclude *294 that there is "no possible factual or legal basis on which it might be obligated to indemnify its insured under any policy provision." Allstate Insurance, 78 N.Y.2d at 45, 571 N.Y.S.2d 429, 574 N.E.2d 1035.
The Court is aware that the Ireland Complaint also challenges the "design" of the Georgica groins. The relevant design for the Georgica groins was completed when the "Report on Need and Design of GroinsVicinity of Georgica Pond, East Hampton" was signed by the Chief of Engineers for the Army Corps of Engineers in July of 1964. Prior to that July 1964 report, the Georgica groins were merely proposed, their precise position and configuration was not decided. Of the relevant policies, only Travelers Policy 1964-1965 covers July of 1964. Therefore, genuine issues of material fact remain as to whether the design of the Georgica groins, as alleged in the Ireland Complaint, might obligate Travelers to indemnify and defend the County.
Royal also argues that its duty to indemnify is entirely contingent upon the occurrence of the "accident" within its policy periods.[2] Royal's policy periods run from 1966 until 1976. Since the asserted "accident," the construction of the Georgica groins, was completed in 1965, Royal contends that its duty to indemnify and defend is not triggered by its policies that cover 1966 until 1976. This argument fails to persuade the Court. The language of the Royal policies provides that the duty to indemnify and defend is contingent upon the occurrence of "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the [County]." Joint Stipulation of Facts ¶ 30 (emphasis added). Based, upon this language, a genuine issue of material facts persists as to whether a continuing nuisance claim, such as the one asserted by Ireland, triggers the duty to indemnify and defend under Royal Policies 1966-1976. Cf. E.R. Squibb & Sons, Inc. v. Lloyd's & Companies, 241 F.3d 154, 166 (2d Cir.2001) (discussing the injury-in-f act standard for carrier liability).
Royal and Travelers also suggest that Ireland did not acquire title to the beachfront property at issue in the Ireland Complaint until 1969. See, e.g., Travelers Reply Brief at 5 n. 2. In support of this contention, Royal and Travelers provide the Court with a title search on the Ireland property. The County provides little substantive argument on this point, merely arguing that "this issue has not been decided" in Ireland. Notably, however, the County does not dispute the substantive truth of this contention. Therefore, the Court will assume, for the purposes of this motion, that Ireland did not possess title in the land until 1969.[3]See Rule, 85 F.3d at 1011(once the moving party has come forward with support demonstrating that no genuine issue of material fact remains, the non-moving party "must come forward with affidavits, depositions, or other sworn evidence ... setting forth specific facts showing that there exists a genuine issue of material fact")
As discussed supra, the Ireland Complaint challenges the construction and design of the Georgica groins. This construction and design occurred during the policy period of Travelers Policy 1964-1965. *295 According to Travelers, the duty to indemnify and defend is triggered if "an accident that occurred during the Policy Period and/or the property damage itself occurred during the Policy Period." Travelers' Memorandum in Support at 10. Though Travelers contends that no damages were experienced until the completion of the Georgica groins, which occurred outside of the Travelers 1964-1965 policy period, it is uncontested that the actual construction occurred during the relevant policy period. Travelers' own reading of the relevant policy language allows for either an accident or damage to trigger the duty to indemnify and defend. See Travelers Memorandum at 10. Under that formulation, the absence of any damage to property within the policy period does not eliminate the duty to indemnify and defend when the accident actually did occur during the relevant period. As such, the Court finds no reason to utilize the timing of Ireland's acquisition of title as a rationale for the dismissal of Travelers from the instant action.
With regard to Royal, the timing of Ireland's acquisition of title only modifies Royal's duty to indemnify and defend. Assuming that Ireland did not acquire title to the property until 1969, Royal's duty only springs from the policies issued between 1969 and 1976, the years after acquisition of the property for which Ireland may articulate a cognizable claim for damages. With regard to those remaining policies, genuine issues of material fact persist.
Travelers and Royal also maintain that certain New York state and county laws prevent Ireland from recovering any damages in the relevant policy periods. The relevant county law, New York County Law § 52, states:
Any claim or notice of claim against a county for damage, injury or death, or for invasion of personal or property rights, of every name and nature, and whether casual or continuing trespass or nuisance and any other claim for damages arising at law or in equity, alleged to have been caused or sustained in whole or in part by or because of any misfeasance, omission of duty, negligence or wrongful act on the part of the county, its officers, agents, servants or employees, must be made and served in compliance with [§ 50-e] of the general municipal law. Every action upon such claim shall be commenced pursuant to the provisions of [§ 50i] of the general municipal law. The place of trial shall be in the county against which the action is brought.
N.Y. County Law § 52(1) (McKinney 2002). Section 50-i of the General Municipal Law, specifically referenced in § 52, specifies that such an action against a county "shall be commenced within one year and ninety days after the happening of the event upon which the claim is based." N.Y. Gen. Mun. Law § 50-i(1)(c) (McKinney 2002). Section 50-e requires, as a condition precedent to any action against a county, the filing of a notice of claim within ninety days after the claim arises. N.Y. Gen. Mun. Law § 50-e(1)(a) (McKinney 2002). There is no contention that Ireland failed to file a timely notice of claim, in compliance with § 50-e. However, Royal and Travelers contend that the New York state courts have interpreted the language of 50-e(1)(a) to limit a plaintiff "to seeking those damages she sustained during the ninety day period before she served her Notice of Claim on [the] County." Travelers at 19.
To support this contention they cite several cases from the Appellate Division, Fourth Department, of the New York Supreme Court, see Goldstein v. County of Monroe, 77 A.D.2d 232, 432 N.Y.S.2d 966 *296 (4th Dep't 1980); Phaler v. Hicks, 71 A.D.2d 820, 419 N.Y.S.2d 394 (4th Dep't 1979); Doran v. Town of Cheektowaga, 54 A.D.2d 178, 388 N.Y.S.2d 385 (4th Dep't 1976); Jones v. Oneida County, 263 A.D. 794, 31 N.Y.S.2d 478 (4th Dep't 1941), and one case from the New York Court of Appeals, see Thomann v. City of Rochester, 256 N.Y. 165, 176 N.E. 129 (1931). Under the language employed by these cases, the Ireland Complaint states a claim based on continuing nuisance rather than a series of discrete torts. Such a "cause of action accrues anew each day" See Rapf v. Suffolk County of New York, 755 F.2d 282, 292 (2nd Cir. 1985). "[G]iven that [Ireland's] complaint sufficiently states a cause of action for a continuing tort for which the cause of action accrues anew each day, by filing a notice of claim even in [October 1998], [Ireland] ha[s] satisfied the General Municipal Law's requirement^ pursuant to § 50-e,] for filing such a notice within ninety days of the time the claim arises." Id.; see also Kennedy v. United States, 643 F.Supp. 1072 (E.D.N.Y.1986); Stanton v. Town of Southold, 266 A.D.2d 277, 698 N.Y.S.2d 258, 259-260 (2d Dep't 1999); but see Jensen v. General Elec. Co., 82 N.Y.2d 77, 82-83, 603 N.Y.S.2d 420, 623 N.E.2d 547 (1993) (discussing the availability of damages when a plaintiff learned of continuing wrong outside of the period of limitations under N.Y.C.P.L.R. 214-c(2)). This continuing tort claim, proper for the purposes of § 50-e, alleges that the construction of the Georgica groins occurred during the policy period of Travelers Policy 1964-1965. Likewise, Ireland Complaint also alleges damages that are suffered during the policy periods of Royal Polices 1966-1976. However, the Carriers contend that these claims are not cognizable because they claim damages and "occurrences" that occur more than 90 days prior to the filing of a notice of claim.
The Court has read the cited cases. Only one case purports to limit damages for a continuing wrong to 90 days prior to the notice of claim, Goldstein, 432 N.Y.S.2d at 968. That case specifically said "Plaintiffs complaint alleges a continuing wrong with recurring causes of action in negligence and nuisance and limits damages to those caused by the alleged unlawful acts sustained within 90 days preceding the date of filing of the notice of elaim." Id. However that case involved a policy that raised storm drain levels at certain discrete times, resulting in overflow onto private property. Id, The other cited cases likewise involved injury "which is not necessarily of a permanent character, and which results; in intermittent and recurring injuries." Doran v. Town of Cheektowaga, 388 N.Y.S.2d at 386. This language regarding "intermittent injuries" comes from a New, York Court of Appeals case that the Carriers fail to cite. See Meruk v. City of New York, 223 N.Y. 271, 276, 119 N.E. 571 (1918). Meruk and the cases that cite it, clearly outline the limits for damages involving continuing wrongs that result in discrete injurious events. Id, The Georgica groins are permanent structures that allegedly effected a permanent change to the character of the beach. This situation is differentiable from a water policy which intermittently raises storm drain levels. See, e.g., Meruk, 223 N.Y. at 276, 119 N.E. 571; Doran, 388 N.Y.S.2d at 386; Goldstein, 432 N.Y.S.2d at 968. In light of these differences, the Court is not persuaded by the Carriers Section 50-e argument. As such, with regard to this specific argument, Travelers and Royal have failed to establish, consistent with the summary judgment standard, the absence of a material issue of fact.

B. Apportionment of Defense.
Travelers and Royal also request that, to the extent summary judgment is not *297 granted, the Court apportion the costs among the remaining defendants. Specifically, Royal requests a pro rata apportionment of all costs, including both indemnification and defense costs. However, this request was not the subject of the notice of motion submitted to the Court. Moreover, the briefing provided to the Court does not and can not address apportionment in light of the instant Court order. As a result, the Court denies the request to apportion costs at this time. This denial is without prejudice to renew in a later, separate motion.

III. CONCLUSIONS.
For the reasons discussed infra, the Court concludes that the following policies cannot be triggered by the allegations in the Ireland Complaint:
1. Fidelity Policy 1959-1960;
2. Travelers Policy 1960-1961;
3. Travelers Policy 1961-1962; and
4. Royal Policies 1966-1968.
The County fails to allege that other policies were issued by Fidelity. Accordingly, summary judgment is GRANTED as to Fidelity. However, summary judgment is DENIED as to Travelers and Royal. Travelers and Royal remain as defendants in the instant action, based upon Travelers Policy 1964-1965 and Royal Policies 1969-1976. The remaining defendants' request for apportionment of costs is also DNIED, without prejudice to renew as a separately briefed motion accounting for the instant order.
SO ORDERED.
NOTES
[1] See discussion infra at 9, regarding the "design" of the Georgica groins.
[2] As discussed supra, Travelers concedes that its duty to indemnify and defend is contingent on either the occurrence of an accident or the experience of damage within a relevant policy period. See Travelers Memorandum at 10.
[3] Parenthetically, the Court notes that the parties provided little helpful briefing on the issue of Ireland's title.